UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:23-CV-99-LLK

DIANE S.                                                                PLAINTIFF

v.

LELAND DUDEK,
Acting Commissioner of Social Security                                  DEFENDANT

MEMORANDUM OPINION AND ORDER

On July 18, 2023, Plaintiff Diane Smith filed a *pro se* Complaint seeking judicial review,

pursuant to 42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying her claims for

Disability Insurance (DIB) and Supplemental Security Income (SSI) Benefits under Titles II and

XVI of the Social Security Act. After several unsuccessful attempts at representing herself in this

litigation, Plaintiff was able to hire attorney Julie Atkins who entered an appearance on Plaintiff's

behalf on October 28, 2024. [DN 18]. Plaintiff's Fact and Law Summary and brief are filed at DN

21, the Commissioner's responsive Fact and Law Summary is at DN 22. No Reply was filed. The

parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to

determine this case, with any subsequent appeal to be filed directly to the United States Court of

Appeals for the Sixth Circuit. [DN 10]. The matter is now ripe for determination.

After examining the administrative record, the arguments of the parties, and the applicable

authorities, the Court is of the opinion that the ALJ's Decision is supported by substantial evidence

and will accordingly AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's

Complaint.

**Administrative History**. Plaintiff filed applications for Title II DIB and Title XVI SSI

benefits on August 21, 2020, alleging disability beginning March 15, 2020, as a result of asthma,

type 1 diabetes mellitus, and Group C streptococcus. She was 43 years old at the time of filing. Her claims were denied initially on March 12, 2021, and upon reconsideration on October 18, 2021. Plaintiff timely requested a hearing before an ALJ which was granted. Due to COVID-19, ALJ Jennifer B. Thomas conducted the July 7, 2022, hearing via telephone; Plaintiff was represented at the hearing by attorney Kevan Doran. James D. Miller, an impartial vocational expert, also provided testimony at the hearing. The ALJ evaluated the evidence of record using the requisite five-step sequential evaluation process. On August 25, 2022, the ALJ issued her written Decision [DN 9] at 34-43 and found that Plaintiff was not disabled at any time from March 15, 2020, through the date of the August 25, 2022, Decision. [DN 9] at 43.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council. On June 26, 2023, the Appeals Council denied Plaintiff's request for review [DN 9] at 6, making the ALJ's Decision the final Decision of the Commissioner and subject to judicial review in this Court. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

**The ALJ's Decision**. The ALJ's Decision [DN 9] at 34-43 denying Plaintiff's claims for DIB and SSI benefits was based on the five-step sequential evaluation process which applies in all Social Security cases.

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and that the claimant engaged in substantial gainful activity since March 15, 2020, during the following periods: 3rd quarter 2020, 1st quarter 2021, 2nd quarter 2021, and 3rd quarter 2021 (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.). However, as there had been a continuous 12-month period during which the claimant did not engage in substantial gainful activity, the ALJ proceeded with the sequential evaluation process

and made findings to address the period the claimant did not engage in substantial gainful activity. [DN 9] at 37.

Second, the ALJ found that Plaintiff has the following severe impairments: respiratory disorder, hidradenitis suppurativa, and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

As in any case that proceeds beyond Step 3, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety. 20 C.F.R. §§404.1545(a)(3), 416.945(a)(3). The ALJ found that, notwithstanding his impairments, Plaintiff can perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps or stairs but should never clime ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can frequently reach overhead and all around with the upper extremities. She can tolerate occasional exposure to atmospheric conditions as defined by the Selected Characteristics of Occupations/Dictionary of Occupational Titles.

[DN 9] at 39.

At the Fourth Step, the ALJ found that Plaintiff is not disabled, and that she is capable of performing her past relevant work as a security guard and laundry aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

In the alternative, the ALJ continued her analysis to Step Five of the sequential evaluation process, noting that in addition to Plaintiff's past relevant work, there exist significant numbers of other jobs in the national economy that she can perform considering her age, education, work experience and residual functional capacity. Using the Medical-Vocational Guidelines as a framework for decision-making, the ALJ asked the vocational expert if there were other jobs suitable to Plaintiff based upon her RFC and resultant eroded light work occupational base. Considering the relevant limiting factors, the vocational expert was able to identify three additional unskilled light work jobs that would accommodate Plaintiff's RFC: Price marker, Folding machine operator, and Housekeeping/cleaner. [DN 9] at 73-74.

**Standard of Review**. The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

Because Plaintiff filed her DIB and SSI claims in August of 2020 [DN 9] at 98, the new rules for weighing medical opinions apply. See 20 C.F.R. §§ 404.1520c, 416.920c ("For claims

filed … on or after March 27, 2017, the rules in this section apply.") Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, ALJs will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(c)(5). However, the ALJ need only explain how he/she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(c)(2), 416.920c(c)(1)-(c)(2). Without the treating physician rule, the applicable regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Relief Sought by Plaintiff**. Plaintiff's Fact and Law Summary outlines two arguments against the ALJ's Decision as follows: 1) "The ALJ failed to solicit opinion evidence concerning a new diagnosis of bipolar disorder, preventing a finding of substantial evidence supporting the severity finding, medical equivalence finding, RFC, and decision" [DN 21] at 9; and 2) "The ALJ failed to support with substantial evidence her interpretation of the raw clinical evidence in crafting a physical RFC accounting for Plaintiff's severe hidradenitis suppurativa, preventing a finding of substantial evidence supporting the RFC and decision" *Id*. at 10.

**Evaluating Mental Impairments**. In cases where a claimant has mental impairments, the ALJ must determine the degree to which they significantly limit a claimant's ability to do one or more basic work activities. This analysis is based upon the degree of functional limitation in four

broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. §§ 404.1520(c)(3), 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. The four areas of mental functioning are evaluated on the following five-point rating scale: none, mild, moderate, marked and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). To satisfy the paragraph B criteria, a claimant's mental disorder must result in an extreme limitation in one or marked limitation in two or the four areas of mental functioning. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. If the four areas of mental functioning are rated as "none" or "mild," the ALJ will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

**The ALJ's findings pertaining to Plaintiff's mental health are supported by substantial evidence, and the ALJ was not obligated to order a consultative mental evaluation in order to more fully develop the record.** Plaintiff takes issue with the ALJ's treatment of her mental health condition and the ALJ's resulting findings at Steps 2, 3, and 4, arguing that the ALJ was obligated to refer her for a consultative mental health examination because Plaintiff's provider Johnni Cansler, D.N.P. changed Plaintiff's diagnosis from depression to bipolar disorder. That is, "Plaintiff contends that the diagnosis of bipolar disorder by a specialist constitutes a critical body of evidence that was not accounted for in opinion evidence available to the ALJ" DN 21, at 9 (citing *Gonzales v. Comm'r of Soc. Sec.*, 3:21-cv-00093-CEH, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022).

At Step Two, the ALJ found that Plaintiff has severe physical impairments of respiratory disorder, hidradenitis suppurative, and degenerative disc disease of the lumbar spine, but declined

to find Plaintiff's mental health symptoms of depression and anxiety severe [DN 9] at 37. At Step

Two, the Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are

found non-severe when other impairments have been found severe in order to clear the "threshold

inquiry" of Step Two. *Anthony v. Comm'r of Soc. Sec.*, F. App'x 451, 457 (6th Cir. 2008); *Rabbers*

*v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009). In finding that Plaintiff's mental

impairments were non-severe, the ALJ reviewed the available treatment records and found:

> The claimant also reported mental health symptoms related to depression and
> anxiety. However, she sought supportive counseling with a mental health provider
> on only two occasions – May and June 2022 (Exhibit 13F). She has no ongoing
> involvement in cognitive behavioral therapy, support groups or other specialized
> mental health treatment. She has not required crisis intervention, inpatient
> psychiatric hospitalization, or other intensive mental health treatment. Throughout
> the record, treating providers indicated that she demonstrated cooperative behavior,
> normal mood, and normal affect (Exhibits 5F, 9F). Moreover, she had euthymic
> mood, intact memory, good attention/concentration, appropriate thought content,
> and good insight (Exhibit 13F). Considering the claimant's minimal mental health
> treatment history and mild clinical findings, the undersigned concludes that the
> claimant's medically determinable mental impairments of depression and anxiety
> disorder, considered singly and in combination, do not cause more than minimal
> limitation in the claimant's ability to perform basic mental work activities and are
> therefore nonsevere.

ALJ's Decision [DN 9 at 37].

In making her non-severe finding, the ALJ considered the four broad functional areas of

mental functioning ("paragraph B" criteria) and found Plaintiff to have mild limitation in

understanding, remembering, or applying information; mild limitation in interacting with others;

mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting

or managing oneself. [DN 9 at 38]. In support of these findings, the ALJ referenced and relied

upon treatment records, Plaintiff's self-reported activities of daily living, and the lack of evidence

of cognitive deficits, significant interpersonal conflicts, or maladaptive behavior. *Id*. The ALJ's

findings are consistent with the undersigned's review of the administrative record; it is particularly

noteworthy that Plaintiff sought out mental health treatment only twice since her alleged onset date. The record also contains evidence of Plaintiff's activities of daily living which include household chores, shopping, managing her finances, bowling, driving and working for several quarters at substantial gainful activity levels during the almost two and a half years between her alleged onset date and the date of the Decision.

Plaintiff contends that it was error for the ALJ to fail to further develop the record with referral for a consultative mental health examination, especially in light of the medical opinion of Johnni Cansler, DNP/APRN who changed Plaintiff's mental health diagnosis from depression to bipolar disorder. However, it is Plaintiff who bears the burden of proving her impairments are severe, and the mere diagnosis of a condition [such as bipolar disorder] says nothing about its severity. See *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The ALJ in this case was bound to evaluate the functional imitations imposed by Plaintiff's mental health symptoms regardless of the diagnostic label assigned to those symptoms. And the Commissioner's point is well-taken: there is "substantial overlap in symptomatology between different mental impairments, and there is a degree of inherent subjectivity to the diagnosis of mental conditions. Hence, the ALJ considered Plaintiff's psychological symptoms and their effect on her functioning together, instead of separately, regardless of the diagnostic label." [DN 22] at 6.

Furthermore, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant … the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y Health & Hum. Servs*., 803 F.2d 211, 214 (6th Cir. 1986). The regulations indicate that, "[g]enerally, [the Commissioner] will not request a consultative examination until [they] have made every reasonable effort to obtain evidence from your own medical sources." 20 C.F.R. §§ 404.1512(b)(2); 416.912(b)(2). "If [the]

medical sources cannot or will not give [the ALJ] sufficient medical evidence about [an] impairment . . . to determine whether you are disabled or blind, [the ALJ] may ask [the claimant] to have one or more physical or mental examinations or tests." 20 C.F.R. §§ 404.1517; 416.917. With regard to how the Commissioner considers evidence, the regulations specifically address incomplete or inconsistent evidence, noting that where it is insufficient, it does not contain all of the information needed to make a determination or decision. 20 C.F.R. §§ 303.1520b(b)(1), 416.920b(b)(1).

Here, there was sufficient evidence in the record before the ALJ to make a determination as to Plaintiff's disability claim. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x, 359, 364 (6th Cir. 2014). And while there are special circumstances in which the Sixth Circuit has held that an ALJ must "exercise a heightened level of care" in developing the record, that heightened care does not apply to claimants who are represented by counsel, *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x 456, 459 (6th Cir. 2008). The Court agrees with the Commissioner that the ALJ appropriately considered all of the relevant evidence in the record, including Plaintiff's numerous normal or euthymic mental status findings in treatment records, minimal and entirely conservative treatment history, and her daily activities. An ALJ is under no obligation to obtain a medical opinion to support her decision, *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). Plaintiff does not argue that she requested that the ALJ or Commissioner order a psychological consultative examination be performed and the Court's own review of the record has not revealed any such request. The Court finds for all these reasons that the ALJ did not err by not ordering a psychological consultative examination.

To the extent that Plaintiff's argument suggests that the ALJ failed to properly evaluate the functional impact of Plaintiff's non-severe, mild mental limitations on her RFC to perform her past

relevant work, that argument is also without merit. Non-severe impairments do not necessarily cause functional limitations. SSR 96-8p, 1996 WL 374184, at *5. A non-severe impairment, by definition, is one that "does not" have more than a "minimal" impact upon the "claimant's ability to work." *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). Even so, it may "contribute to a claimant's functional imitations when considered "in combination" with other impairments. SSR 96-8p, 1996 WL 374184, at *5. To the extent the ALJ was required to articulate how Plaintiff's non-severe mental impairments affect her RFC, that explanation need not be explicit. However, in this instance, the ALJ was explicit. That is, the ALJ explicitly justified her mild mental limitation findings, then expressly provided for their weight and application in the rest of the Decision:

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

ALJ Decision [DN 9] at 38. It is always preferable for an ALJ to explicitly discuss why each non-severe impairment failed to translate into functional limitations, the issue is simply whether a reviewing Court can follow the ALJ's rationale and meaningfully review the decision. *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 WL 96920, at *3-4 (6th Cir. 1999). That the ALJ further indicated that her RFC was based upon "all symptoms" and included references to the objective medical evidence as well as Plaintiff's daily activities, the ALJ's Decision does not leave this Court to speculate as to why she did not find that Plaintiff's mild limitations caused functional

limitations. While Plaintiff contends that the change in mental diagnosis from depression to bipolar disorder warranted more from the ALJ, the relevant question is whether the ALJ's RFC assessment, a matter on which Plaintiff bears the burden, is supported by substantial evidence. Further, Plaintiff does not state what additional functional limitations the ALJ should have assessed to accommodate her mental limitations. It is the Plaintiff who bears the burden of proving the existence and severity of limitations caused by her impairments through Step Four of the sequential evaluation process, *Jones v. Comm'r of Soc. Sec*, 336 F.3d 469, 474 (6th Cir. 2003). Plaintiff has simply not met her burden here.

**The ALJ's RFC findings are supported by substantial evidence and comport with applicable law.** Plaintiff takes issue with the ALJ's RFC findings, arguing that the ALJ failed to properly account for Plaintiff's limitations following bilateral surgery for her hidradenitis suppurativa. Specifically, Plaintiff suggests that the ALJ erroneously interpreted raw clinical evidence in crafting a physical RFC when instead she should have solicited additional opinion evidence. Plaintiff argues the same "heightened duty to develop the record" with regard to the ALJ's functional limitation findings resulting from Plaintiff's physical condition and surgery for hidradenitis suppurativa as she did for her mental condition addressed herein-above. Specifically, she argues,

> Based on the principles expressed in Gonzales, 2022 WL 824124, at *8, the absence of opinion evidence covering Plaintiff's post-surgical upper extremity condition, and the absence of consideration for the available testimony concerning Plaintiff's post-surgical upper extremity condition, the ALJ in this case should have further developed the record with an opinion regarding Plaintiff's post-surgical upper extremity condition and the functional implications of her condition.

[DN 21] at 12. Plaintiff's argument that the ALJ failed in her duty to develop Plaintiff's case regarding her physical limitations fails for much the same reasons as the mental limitations argument failed as addressed hereinabove. Specifically, "the regulations do not require an ALJ to

refer a claimant to a consultative specialist, but simply grant … the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). "If [the] medical sources cannot or will not give [the ALJ] sufficient medical evidence about [an] impairment . . . to determine whether you are disabled or blind, [the ALJ] may ask [the claimant] to have one or more physical or mental examinations or tests." 20 C.F.R. §§ 404.1517; 416.917.

Plaintiff's post-surgical upper extremity condition of hidradenitis suppurativa was addressed in detail in the ALJ's Decision:

> The claimant has undergone significant treatment related to hidradenitis suppurativa. In general, the majority of the abscess treatment she received occurred while the claimant was working at or near substantial gainful activity levels. She sought treatment in August 2020 for a skin lesion on the left side. She was prescribed Bactrim but stopped taking it within the first week because "it made me feel funny" and her infection had resolved quickly. She sought additional treatment in November 2020 due to bilateral abscesses. Treating providers noted she demonstrated no tenderness, warmth, or streaking lines from the axilla areas (Exhibit 3F). She sought some additional treatment in March, May, and June of 2021 while she was working full-time. She continued to experience residual symptoms and underwent surgery in January and March 2022 with no evidence of significant post-surgical limitations. The undersigned conclude [sic] the claimant could only frequently reach with the upper extremities but there is no evidence of additional restrictions.

ALJ Decision, [DN 9] at 40.

While Dr. Kabithe's post-surgical records were not available to the ALJ, his note to her primary care provider indicated that her incision from the January left axilla surgery had healed, sutures had been removed, and indicated no scheduled follow-up care [DN 9] at 567. In addition, Dr. Kabithe's one pre-operative treatment record indicated that Plaintiff electively decided to postpone her surgeries "until the temperatures are cooler." [DN 9] at 525. The notation made on the medical records request form signed by Dr. Kabithe on October 13, 2021, indicates that Plaintiff "is not disabled for dx of hidradenitis suppurativa." [DN 9] at 523. Plaintiff's own hearing

testimony indicated that she has not had recurrent lesions or abscess since her surgeries [Administrative Hearing, DN 9] at 68.

As noted by the Commissioner, it was proper for the ALJ to consider Plaintiff's ability to maintain employment as a relevant factor in determining whether she was disabled, *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013). The ALJ's Decision also reflected that Plaintiff's activities included driving, bowling, and working as a laundry aid, and it was reasonable for the ALJ to assume those activities are inconsistent with greater restrictions than those found in her RFC. And notably, "the record does not contain any opinions from treating physicians/providers indicating that the claimant is disabled or even has limitations greater than those determined in this decision." [DN 9] at 41.

The ALJ is charged with determining a claimant's RFC "based on all the relevant medical and other evidence" in [her] case record. 20 CFR §§ 404.1545(a)(3), 416.945(a)(3). Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x, 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of other subjective symptoms. As noted, no treating physicians/providers indicated that Plaintiff was disabled or suggested limitations. Thus, Plaintiff's challenge fails under 1), and as more fully explained below, it fails under 2) as well.

A claimant's subjective complaints are one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When a favorable disability determination cannot be made solely based upon the objective medical evidence, an ALJ must analyze the symptoms of the claimant, considering the claimant's statements about pain or

other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. §§ 404.1529(c)(3), 404.929(c)((3) and Social Security Ruling 16-3p, 2017 WL 5180304 ("SSR 16-3p").

When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements at the time he or she made them." SSR 16-3p, 2017 WL 5180304, at *10. The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including:

(i) the claimant's daily activities;

(ii) the location, duration, frequency, and intensity of the pain or other symptoms;

(iii) precipitating and aggravating factors;

(iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;

(v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;

(vi) many measures the claimant takes or has taken to relieve the pain or other symptoms; and

(vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529, 416.929. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 664 (6th Cir. 2004). The determination of a claimant's RFC is based on a variety of medical and nonmedical factors and is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). "No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity [RFC] finding." *Tucker v. Comm'r*, 775 F. App'x 220, 226 (6th Cir. 2019). The ALJ did not "improperly assume the role of a medical expert by assessing the

14

medical and non-medical evidence before rendering a residual functional capacity [RFC] finding." *Poe v. Comm'r*, 342 F. App'x 149, 157 (6th Cir. 2009). In this case, the ALJ's RFC finding was substantially supported by the ALJ's review of Plaintiff's medical records and the medical and non-medical evidence as a whole.

In all social security disability cases, the ultimate "burden lies with the claimant to prove that she is disabled." *Ferguson v. Comm'r*, 628 F.3d 269, 275 (6th Cir. 2010); *see also* 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled") and 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your [RFC]"). In this case, to the extent a medical opinion may have supported her disability claim, Plaintiff should have submitted it to the ALJ for consideration. The ALJ committed approximately four pages of her ten-page opinion to reviewing the evidence of record, and this Court has reviewed the record in its entirety.

Having reviewed the medical and other evidence, particularly the facts and sources relied upon by the ALJ in formulating the RFC, the undersigned finds that the ALJ's Decision stands solidly on substantial evidence. "No principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result," *Id*. Most disability claims have medical and other evidence that could support findings either way; it is the ALJ's job to weigh that evidence and articulate the reasons for either accepting or rejecting it: "[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). "[A]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v.*

*Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Because the Plaintiff has identified no basis to conclude that ALJ Thomas's Decision is unsupported by substantial evidence, her arguments fail.

Finally, Plaintiff additionally faults the ALJ for not holding the administrative record open further for Plaintiff's counsel to obtain surgical records from Dr. David Kabithe. In a Pre-Hearing Brief dated June 30, 2022, and prepared by Plaintiff's Attorney Doran, he indicates that he is still awaiting medical records from *three* entities and asks for an extension of thirty days in which to obtain them: Pain Management of America, Cansler Health, and Dr. David Kabithe. [DN 9] at 369-70. In contrast, the Hearing Transcript indicates that counsel for Plaintiff requested an additional amount of time in which to obtain records from *two* providers: Pain Management of America and Plaintiff's mental health provider, Cansler Health. [Hearing Transcript, DN 9] at 54, and the ALJ granted an extension of two weeks from the Hearing date of July 7, 2022, in which to obtain those records, *Id.*, not thirty days as requested in the Pre-Hearing Brief.

The request asked for and granted during the Hearing was for records from only two entities, excluding Dr. Kabithe. It appears that the ALJ included a grace period in that two-week extension, given that the fax date on the Cansler Health records is July 25, 2022. However, counsel's request that was granted on the record during the Hearing itself was for only Pain Management of America and Cansler Health records. It stands to reason that the ALJ proceeded to finalize her Decision once the records from those two providers were received. Absent a clear request for extension of time during the Hearing for the records of Dr. Kabithe, the undersigned cannot fault the ALJ in this instance. An ALJ is not required to hold a record open for an unreasonable amount of time or indefinitely, particularly when the request made on the record at the Hearing did not include the records of Dr. Kabithe.

For the foregoing reasons, the undersigned finds that ALJ's Decision in this case is thorough and provides the necessary "accurate and logical bridge" between the evidence of record and the ALJ's findings. *Fleischer v. Astrue*, 774 F.Supp. 2d 875, 877 (N.D. Ohio 2011). Accordingly,

<u>ORDER</u>

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence, the Commissioner's final decision is hereby **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**.

March 31, 2025

**Lanny King, Magistrate Judge**
**United States District Court**